UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LARRY D. EPPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1126 (RC) |
| | ) | |
| MAYOR VINCENT GRAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Michael Kelly's Motion to Dismiss [ECF No. 10] and Defendants District of Columbia Housing Authority, Officer Markwell, Sergeant Street, Officer Strother, Officer Brown and Chief Maupin's Motion to Dismiss, or in the Alternative Motion for Summary Judgment [ECF No. 12].[1] For the reasons discussed below, the former will be granted and the latter will be granted in part and denied in part without prejudice.

---

[1] Plaintiff's Motion to Amend and Dismiss the Complaint Against Two of the Defendants Listed in Plaintiff's 43 U.S.C. Section 1983 Mayor Vincent Gray and Attorney General Carnston Mitchell for Failure to Properly State a Claim [ECF No. 16] and Mayor Vincent Gray and the District of Columbia's Motion to Dismiss [ECF No. 5] will be granted. As plaintiff has recognized, *see generally* Pl.'s Mot., the District of Columbia Housing Authority is a legal entity distinct from the District government, *see* D.C. Code § 6-202. Therefore, the District of Columbia is not liable for any damages caused by the District of Columbia Housing Authority or the District of Columbia Housing Authority Police Department. *See Hoffman v. District of Columbia*, 730 F. Supp. 2d 109, 116 (D.D.C. 2010) (concluding that, because "DCHA is an independent agency legally distinct from the District government," a DCHA hearing officer's "determinations do not have claim or issue preclusive effect against the District"). For ease of case administration, the case caption remains unchanged.

I. BACKGROUND

The events giving rise to plaintiff's claims began on August 12, 2011, when Sgt. Willie Street of the District of Columbia Housing Authority Police Department ("DCHAPD") "intercepted" plaintiff near the intersection of Division Avenue and Blaine Street in Northeast Washington. Complaint ("Compl.") [ECF No. 1] ¶ 13; *see* Plaintiff's Affidavit ("Pl.'s Aff.") at 1 [ECF No. 1 at 18].

*A. Plaintiff's Allegations*

According to plaintiff, he "was minding his business and [walking] in the neighborhood where he is a life-long resident," Compl. ¶ 6, when Sgt. Street "ventured into the surrounding residential neighborhood of a Housing project," *id.* ¶ 17, that is, "outside of [the DCHAPD's] primary assigned area of duty," *id.* ¶ 6.

Sgt. Street, plaintiff alleged, "was driving a [DCHA] Police car[,] made a U turn on [D]ivision Ave[nue], and exited his police car and then demanded that Plaintiff product [sic] some identification." *Id.* ¶ 13. "Plaintiff's immediate response to this command was" to ask why Sgt. Street had stopped him. *Id.* Sgt. Street "responded by saying that he was asking the questions." *Id.* Plaintiff "then proceeded to produce [his] identification," which Sgt. Street used "to run the plaintiff's name for intelligence related to any warrants." *Id.* "Sgt[.] Street requested back up assistance from fellow officers." *Id.* "While awaiting the return of [his] identification," plaintiff allegedly "reach[ed] into [his] top left shirt pocket to retrieve a cigarette." Compl. ¶ 13.

The other DCHAPD officers were identified as Benjamin Markwell, Michael Brown, and Reginal Strother. *See* Defendants District of Columbia Housing Authority, Officer Markwell, Sergeant Street, Officer Strother, Officer Brown and Chief Maupin's Motion to Dismiss, or in the Alternative Motion for Summary Judgment ("Defs.' Mot.") [ECF No. 12], Exs. B (Markwell

Decl.) ¶¶ 7-8, C (Brown Decl.) ¶¶ 7-8 & D (Strother Decl.) ¶ 8. According to plaintiff, upon arrival they "circled . . . and attacked" him, "put [him] into a full nelson chock [sic] hold and lift[ed him] up off the ground." *Id*. During this encounter, plaintiff's "knee was skinned against . . . a brick wall." *Id*. Further, he alleged, "[t]he contents of [his] left shirt-pocket were shook out of the pocket with . . . repeated hitting against [his] upper chest." *Id*. Among those contents were "two plastic bags." *Id*. Plaintiff was then arrested and charged with possession of heroin. *Id*.; *see id*., Ex. (Information dated August 13, 2011) [ECF No. 1 at 48]. The criminal charge was dismissed for want of prosecution on December 8, 2011. *Id*. ¶ 13.

Plaintiff was on parole at the time of his arrest on August 12, 2011. *Id*. Apparently based on this arrest, the United States Parole Commission issued a parole violator warrant on September 9, 2011, causing plaintiff's return to custody on September 20, 2011 upon execution of the warrant. *Id*.; *see id*. ¶¶ 8-9. Notwithstanding dismissal of the criminal charge, the Parole Commission conducted a revocation hearing on January 18, 2012 and revoked plaintiff's parole. *Id*. ¶ 9. Thereafter, plaintiff "was made to endure 18 months of incarceration for noncriminal administrative infractions" of the conditions of his parole. *Id*. ¶ 13. Further, plaintiff alleged, he lost Social Security benefits as a result of the Parole Commission's actions, *id*. ¶ 10, and he sustained "physical abuse and mental anguish," for which he demands compensatory and punitive damages, *see id*. at 12-13.

### B. Defendants' Representations

According to defendants, on August 12, 2011, "all DCHA police officers were on patrol as part of the Metropolitan Police Department and its . . . All Hands On Deck ('AHOD') initiative," Defs.' Mot., Ex. E (Street Decl.) ¶ 4, which meant that "all available police officers and recruits with the Metropolitan Police Department and DCHAPD [were] called to duty and

3

assigned to street patrol citywide for 48 hours," *id*., Ex. E ¶ 5; *see id*., Exs. B ¶¶ 3-5, C ¶¶ 3-5 & D ¶¶ 4-6.

Sgt. Street stated that he observed plaintiff "emerge from an alley at Division Avenue and Blaine Street NE" walking towards his vehicle, *id*., Ex. E ¶ 8, and he "made a contact with [plaintiff] shortly thereafter," *id*., Ex. E ¶ 9. According to Sgt. Street, he asked plaintiff whether he would consent to a pat down for weapons; plaintiff complied. *Id*., Ex. E ¶¶ 10-11. While Sgt. Street was "patting down [plaintiff's] upper body, [plaintiff] jumped as if he [were] startled," *id*., Ex. E ¶ 12, at which time Sgt. Street asked plaintiff "to place his hands on a wall," in a position where his "upper body was slightly bent over," *id*., Ex. E ¶ 13. "As the pat down continued, two plastic baggies containing a substance fell from [plaintiff's] shirt pocket." *Id*., Ex. E ¶ 14. Sgt. Street then "called for backup to have the substance field tested." *Id*., Ex. E ¶ 15. "Officers Brown and Markwell arrived on the scene[,] and field tested the substance [which] tested positive for heroin." *Id*., Ex. E ¶ 16. Plaintiff was arrested for possession of heroin. *Id*., Ex. E ¶ 17.

Sgt. Street averred that none of the officers "use[d] physical force with [plaintiff]." *Id*., Ex. E ¶ 18. "There was no need to get physical because [plaintiff] complied with all orders given to him." *Id*., Ex. E ¶ 19. At no time, declared Sgt. Street, did plaintiff "complain that he was injured or ask for medical treatment." *Id*., Ex. E ¶ 20. Officer Strother's account of the events was consistent with Sgt. Street's representations. *See generally id*., Ex. D ¶¶ 8-20. He declared that "[n]o DCHA police officer used physical force" with plaintiff, *id.*, Ex. D ¶ 19, because plaintiff "remained cooperative throughout" their encounter, *id.*, Ex. D ¶ 20.

According to Officers Markwell and Brown, they were called to the scene in order to conduct a field test of the substance found in the baggies that fell from plaintiff's pocket. *See id.*,

4

Exs. B ¶¶ 8-9 & C ¶¶ 8-9. The substance tested positive for heroin. *Id*., Exs. B ¶ 9 & C ¶ 9. Neither officer spoke to, had physical contact with, or effected the arrest of plaintiff. *Id*., Exs. B ¶¶ 11-13 & C ¶¶ 11-13.

## II. DISCUSSION

### A. *Defendant DCHA's Motion to Dismiss*

The DCHA defendants treat the complaint as "nothing more than an amalgam of grievances in search of a theory of liability." Defs.' Mem. at 1. They move to dismiss on the ground that it fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure. *See id*. at 4-5. According to defendants, "it is difficult to determine the cause of action alleged by [plaintiff] and to which [d]efendants he attributes his various allegations." *Id*. at 4. Rather, they contend, plaintiff "baldly states that certain actions, although it is impossible to determine which actions and by which actor, violated certain protections afforded to him" under the Fourth, Eighth, Thirteenth and Fourteenth Amendments to the United States Constitution. *Id*. at 5.

Defendants expect far more of a *pro se* litigant than is reasonable. *See, e.g., Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam)). Admittedly, based on the facts alleged, neither the Eighth, the Thirteenth nor the Fourteenth Amendment applies in this case. However, in light of plaintiff's allegations of an "illegal search and seizure/stop and frisk by police," *see* Compl. ¶ 8, an unlawful arrest by DCHAPD officers without probable cause, *see id*. ¶¶ 6, 8, 13, the DCHA's failure to train and supervise its officers, *see id.* ¶¶ 6-8, 15, 17, and the officers' use of excessive force, *see id*. ¶ 13, the complaint is reasonably construed as one brought under 42 U.S.C. § 1983 alleging violations of plaintiff's Fourth Amendment rights. *See, e.g., Steele v. District of Columbia Housing Auth.*, No. 02-1420, 2006 WL 335770, at *5 (D.D.C. Feb. 14, 2006) ("A

5

citizen who alleges that he . . . has been subjected to an unreasonable search or seizure, or excessive force in the course of an arrest or seizure in violation of the Fourth Amendment, may seek redress under Section 1983."); *Reed v. District of Columbia*, 474 F. Supp. 2d 163, 170 (D.D.C. 2007) (noting that "[t]he failure to train or supervise a city employee can amount to an unconstitutional policy when it can be said that the failure amounts to deliberate indifference towards the constitutional rights of persons with whom the officials come in contact"). A critical shortcoming of the complaint is its failure to allege adequately a Fourth Amendment claim against the DCHA.

In order to hold the DCHA liable for a constitutional violation, plaintiff "must show 'not only a violation of his rights under the Constitution or federal law, but also that the [DCRA's] custom or policy caused the violation.'" *Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007) (citing *Warren v. District of Columbia,* 353 F.3d 36, 38 (D.C. Cir. 2004)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, __ U.S. __, __, 131 S. Ct. 1350, 1359 (2011).

With respect to the first prong of this analysis, it is presumed that plaintiff has a right to be free from unlawful searches and seizures and from police officers' use of excessive force. *See, e.g., Graham v. Connor,* 490 U.S. 386, 394 (1989) (treating an "excessive force claim aris[ing] in the context of an arrest or investigatory stop of a free citizen . . . as one invoking the protections of the Fourth Amendment"); *Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987) ("It is well settled that an arrest without probable cause violates the fourth amendment.").

With respect to the second prong, plaintiff must allege "that a policy or custom of the [DCRA] caused the constitutional violation alleged under the first prong." *Baker v. District of*

*Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)); *see Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012) ("Case law has established that a municipality can be held liable only for constitutional violations committed by an employee who acted according to a city 'policy or custom' that was 'the moving force' behind the violation." (citing *Monell*, 436 U.S. at 694)). In other words, there must be an affirmative link between the municipal policy, custom or practice and the alleged constitutional violation. *Connick*, __ U.S. at __, 131 S. Ct. at 1359; *see Warren*, 353 F.3d at 39 (noting ways to demonstrate that custom or policy caused claimed violation of constitutional rights). "*Respondeat superior* or vicarious liability will not attach under § 1983," *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95), and, therefore, the DCHA cannot be held liable solely on account of the actions of its employees, *see Harris*, 489 U.S. at 385.

Wholly absent from plaintiff's complaint are factual allegations regarding the existence or implementation of a DCHA policy, custom or practice resulting in a constitutional violation. This pleading defect is fatal, and plaintiff's constitutional claims against the DCHA fail. *See, e.g., Jackson v. District of Columbia*, 949 F. Supp. 2d 257, 262 (D.D.C. 2013) (dismissing complaint which "offers no factual allegations as to what policy, rule, practice or custom cause the violation of his constitutional rights"); *Faison v. District of Columbia*, 907 F. Supp. 2d 82, 85 (D.D.C. 2012) (dismissing § 1983 claim where "complaint sets forth no factual allegations regarding the existence and enforcement of a municipal policy, custom or practice that directly caused a violation of his Fifth Amendment right to due process"), *aff'd per curiam*, No. 13-7021, 2013 WL 5975981 (D.C. Cir. Oct. 23, 2013).

*B. Defendant Michael Kelly's Motion to Dismiss*

Plaintiff identifies Michael Kelly as the Executive Director of the DCHA. Compl. ¶ 6. It does not appear, however, that defendant Kelly held this position at the time of plaintiff's arrest:

> 6. Michael Kelly was the Executive Director of DCHA from 2000 to 2009.
> 7. Michael Kelly is no longer an employee of DCHA.
> 8. Michael Kelly was not an employee of the DCHA on August 12, 2011 at the time of the incident either.

Defendant Michael Kelly's Motion to Dismiss ("Kelly Mot.") [ECF No. 10], Ex. A (Mosley Decl.) ¶¶ 6-8.[2] Service of process on Kelly was not effected properly, as no DCHA employee would accept service on his behalf. *Id.*, Ex. A ¶¶ 5, 9. Accordingly, Kelly moves to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure for insufficient service of process. *Id.* at 3-4 (page numbers designated by the Court).

Ordinarily, a plaintiff who is proceeding *pro se* and *in forma pauperis* relies on the Clerk of Court and the United States Marshals Service to issue summonses and to serve the defendants. *See* 28 U.S.C. § 1915(d); *see also* Fed. R. Civ. P. 4(c)(3). In such circumstances, a plaintiff generally is not penalized for a failure to effect proper service. *See, e.g., Harrod v. U.S. Parole Comm'n*, No. 13-0774, 2014 WL 606196, at *2 n.1 (D.D.C. Feb. 18, 2014) (denying motion to dismiss under Rule 12(b)(5)); *Harris v. Fulwood*, __ F. Supp. 2d __, __, 2013 WL 5824422, at *4 (D.D.C. Oct. 30, 2013) ("Since plaintiff is proceeding *in forma pauperis* and, thus, relying on the court officers to effect proper service, *see* 28 U.S.C. § 1915(d), the court will not penalize plaintiff by dismissing the complaint [under Rules 12(b)(2) and 12(b)(5)] without first allowing him to provide additional service information that might cure this defect."). Even if plaintiff had

---

[2] Defendant's counsel represents that, "[o]n August 12, 2011, Adrianne Todman was serving as the Executive Director of DCHA." Kelly Mot. at 4.

named the proper Executive Director of the DCHA and if service of process had been sufficient, dismissal as to Kelly still would be warranted.

Plaintiff sues Kelly "in his professional official capacity." Compl. ¶ 6. A suit under § 1983 against a municipal official in his official capacity is "equivalent to a suit against the municipality itself." *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). In other words, the suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005) (internal quotation marks and citations omitted).

Here, plaintiff names the DCHA as a defendant to this action, and the DCHA is "an independent authority of the District Government," D.C. Code § 6-202(a), which can "[s]ue and be sued in its own name," *id*. § 6-203(11). Plaintiff's claims against DCHA's Executive Director in his official capacity are redundant, and defendant Kelly's motion to dismiss will be granted.[3] *See Jeffries v. District of Columbia*, 917 F. Supp. 2d 10, 29 (D.D.C. 2013) (dismissing "redundant [and] inefficient" claims against Chief of the Metropolitan Police Department in her official capacity); *Robinson*, 403 F. Supp. 2d at 49-50 (granting defendant's motion for summary judgment "to the extent that it seeks to have Plaintiff's claims against [former Executive Deputy Chief of the Metropolitan Police Department] in his official capacity dismissed from this suit").

---

[3] Likewise, plaintiff's claims against Joel Maupin, Chief of the DCHAPD, in his official capacity, *see* Compl. ¶ 7, will be dismissed.

9

### C. The DCHAPD Officers' Motion for Summary Judgment

#### 1. Summary Judgment Standard

The court grants summary judgment if defendants "show[] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To this end, defendants are expected to inform the district court of the basis of their motion and to identify the portions of the record on which they rely. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff as the opposing party cannot rely on "mere allegations or denials" in response to defendants' showing. *Burke v. Gould,* 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). He, too, must refer to particular materials in the record either to support his own assertions of fact or to oppose defendants' assertions. *See* Fed. R. Civ. P. 56(c)(1). "[C]onclusory allegations unsupported by factual data will not create a triable issue of fact." *Pub. Citizen Health Research Group v. FDA,* 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted). "At the summary judgment stage, facts must be viewed in the light most favorable to [plaintiff] only if there is a genuine dispute as to those facts," and where "the record taken as a whole could not lead a rational trier of fact to find for [plaintiff], there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations and internal quotation marks omitted).

#### 2. Qualified Immunity

"To the extent that [p]laintiff has successfully alleged any constitutional violations against any of the individual officers," Defs.' Mem. at 8-9, they assert qualified immunity as a defense, *id*. at 9. For purposes of this discussion, because plaintiff has sworn "under penalty of perjury, that the . . . statements of facts alleged in [his] 42 U.S.C.A. 1983 civil rights action

complaint [are] true and correct to the best of [his] knowledge," Pl.'s Aff. at 1, the Court treats the verified pleading as an affidavit in opposition to defendants' motion for summary judgment, *see Neal v. Kelly*, 963 F.2d 453, 457-58 (D.C. Cir. 1992), insofar as its assertions are based on plaintiff's personal knowledge, set forth facts that would be admissible in evidence, or are matters about which plaintiff is competent to testify, *see* Fed. R. Civ. P. 56(c)(4).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This protection is afforded to police officers whether their "error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citations and internal quotation marks omitted). Thus, "all but the plainly incompetent or those who knowingly violate the law" may enjoy the protection of qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-step analysis for resolving government officials' qualified immunity claims. First, the court decides "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 201. If the plaintiff satisfies this first step, the court then decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id*. The sequence of this analysis is not mandatory, however, and courts may "exercise their sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

For purposes of this discussion, it is presumed that the Fourth Amendment protects plaintiff from unlawful searches and seizures and from excessive force in effecting an arrest. And it is presumed that these rights were clearly established on August 12, 2011. The central question, then, is whether the undisputed material facts presented, taken in the light most favorable to plaintiff, show that the conduct of defendants Street, Strother, Markwell and Brown violated plaintiff's Fourth Amendment rights.

"[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Rather, a person is "'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (footnote omitted); *see Gomez v. Turner*, 672 F.2d 134, 141 (D.C. Cir. 1982) ("[I]n this circuit the test of whether a seizure has occurred is whether a reasonable person, innocent of any crime, would have felt free to walk away under the circumstances."). If, for example, an officer "merely engage[s] in conversation with a citizen," he "does not thereby create the requisite restraint on liberty which would constitute an arrest." *Coates v. United States*, 413 F.2d 371, 374 (D.C. Cir. 1969) (footnote omitted). But a person can be "seized" by physical force, or if no physical force is employed, "by a show of authority to which the person submits." *Flythe v. District of Columbia*, __ F. Supp. 2d __, __, 2013 WL 5964008, at *6 (D.D.C. Nov. 8. 2013) (citation omitted).

The standard for arrest is probable cause, *see Gerstein v. Pugh*, 420 U.S. 103, 112 (1975)), which denotes "facts and circumstances within the officer's knowledge that are

12

sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense," *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted). It is a "practical, nontechnical conception," *Brinegar v. United States*, 338 U.S. 160, 176 (1949), factoring in "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," *id.* at 175. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). The arresting officer's state of mind is not relevant in determining whether probable cause exists, *Devenpeck*, 543 U.S. at 152, and his "subjective motive does not invalidate objectively reasonable behavior under the Fourth Amendment," *Oberwetter v. Hilliard*, 680 F. Supp. 2d 152, 167 (D.D.C. 2010).

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck*, 543 U.S. at 152 (citations omitted). If an arrest is justified, then the arresting officer is protected by qualified immunity and the damages action against him fails. *See Saucier*, 533 U.S. at 207; *see also Pierson v. Ray*, 386 U.S. 547, 557 (1967) (holding that "the defense of good faith and probable cause . . . is . . . available to the officers in the action under § 1983").

There remain genuine issues of material fact in dispute as to seizure, search, arrest and use of force. Defendants' declarations shed no light on the reasons for approaching plaintiff or the circumstances surrounding their encounter with plaintiff. Plaintiff alleges that Sgt. Street, while in uniform and driving a police vehicle, initiated contact with him, declined to entertain his questions, and promptly summoned to the scene additional officers who allegedly surrounded

him.  A reasonable person in plaintiff's position could have concluded that he was not free to leave, even without the officers' use of physical force at the outset.  The officers' assertions that plaintiff consented to and complied with the pat down are inconsistent with plaintiff's repeated assertions of an unlawful search.  It is not clear which officer(s) had actual physical contact with plaintiff or which officer(s) effected plaintiff's arrest for possession of heroin.  Plaintiff's version of events implicates all of the officers, while defendants maintain that Officers Brown and Markwell neither touched nor arrested plaintiff.  Strother's level of involvement is unclear.  Lastly, the two sides present vastly different descriptions of the force exerted: either no physical force was used at all, or the officers used sufficient force to cause injury to plaintiff's knee and to shake loose the contents of plaintiff's shirt pocket.  Without further factual development by the parties, the Court cannot determine whether these defendants are entitled to qualified immunity.

## III.  CONCLUSION

For the reasons discussed above, the Court will grant Mayor Vincent Gray and the District of Columbia's Motion to Dismiss [ECF No. 5], Defendant Michael Kelly's Motion to Dismiss [ECF No. 10], and Plaintiff's Motion to Amend and Dismiss the Complaint Against Two of the Defendants Listed in Plaintiff's 43 U.S.C. Section 1983 Mayor Vincent Gray and Attorney General Carnston Mitchell for Failure to Properly State a Claim [ECF No. 16].  Defendants District of Columbia Housing Authority, Officer Markwell, Sergeant Street, Officer Strother, Officer Brown and Chief Maupin's Motion to Dismiss, or in the Alternative Motion for Summary Judgment [ECF No. 12], will be granted in part and denied in part.  An Order accompanies this Memorandum Opinion.

/s/
RUDOLPH CONTRERAS
United States District Judge

DATE:  July 31, 2014